UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | § § § § | |
| *Plaintiff,* | § § § § | |
| v. | § § | CIVIL ACTION NO. 7:26-cv-00063 |
| CALTIA CONSTRUCTION, LLC, BEATRIZ OROZCO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF EDGAR OROZCO, DECEASED | § § § § § § § | |
| *Defendants*. | § § § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW INTO COURT, comes Scottsdale Insurance Company ("Scottsdale"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rule of Civil Procedure 57, hereby seeks declaratory judgment against Defendants, Caltia Construction, LLC ("Caltia"), and Beatriz Orozco, Individually and as Representative of the Estate of Edgar Orozco, deceased, ("Underlying Plaintiff") (both of whom are collectively, "Defendants") for purposes of determining questions of actual, immediate controversy regarding the rights and obligations of the parties in connection with the lawsuit styled *Beatriz Orozco, Individually and as Representative of the Estate of Edgar Orozco, deceased vs. Caltia Construction, LLC, WWP Products, LLC, and Miguel Orocio, Jr., LLC d/b/a M and S Electric*, Case no. C-4902-25-M, pending in the District Court of Hidalgo County of Texas (the "Underlying Lawsuit").

## PARTIES

1. At all relevant times, Scottsdale was, and still is, a corporation organized and existing under the laws of Ohio with its principal place of business in Arizona.

2. At all relevant times, Caltia Construction, LLC, is a Texas company whose principal place of business located in Hidalgo County, Texas, and who may be served with process through its registered agent, Raul Perez, 2112 S Shary Road, Suite 51, Mission, Texas 78572.

3. At all relevant times, Beatriz Orozco is an individual and as heir of Edgar Orozco (deceased), is a party with an interest in the outcome of this litigation and is understood to be residing in Hidalgo County, Texas, who can be served with process at 3700 N K CTR, Apt. 228, McAllen, Texas 78501 or wherever she may be found.

4. Underlying Plaintiff is an individual and party with an interest in the outcome of this litigation because she is the plaintiff in the Underlying Lawsuit, who must be joined to this litigation because even though neither she nor the estate she represents are parties to the Policy at issue, same will not be bound by a judgment rendered as to the Policy's scope of coverage unless the Underlying Plaintiff is made a party to this lawsuit. *Dairyland County Mutual Insurance v. Childress,* 650 S.W.2d 770 (Tex. 1983*).*

## JURISDICTION AND VENUE

5. There is complete diversity of citizenship between Scottsdale, a citizen of Ohio and Arizona, and all Defendants who are citizens of Texas.

6. The amount in controversy exceeds $75,000.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201.

8. Caltia and Underlying Plaintiff are subject to the personal jurisdiction of this Court.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the accident at issue—*i.e.*, a substantial part of the events giving rise to the claim—occurred in Hidalgo County, Texas, which is located in this Court's judicial district.[1]

## NATURE OF THE CLAIM

10. Scottsdale issued a commercial excess policy number CXS4041090 ("Policy") to Caltia for the period January 1, 2025 to January 1, 2026.[2]

11. Scottsdale seeks a declaratory judgment that the Policy's Injury To Employee And Worker Exclusion Endorsement ("Injury To Worker Exclusion") precludes coverage for the claims asserted in the Underlying Lawsuit. On this basis, Scottsdale also seeks a declaratory judgment that it owes no duty to defend or indemnify Caltia in the Underlying Lawsuit.

12. Scottsdale also seeks declaratory judgment that the Policy's Limited Residential Construction Operations Exclusion Endorsement, Exclusion – Designated Operations Covered By A Consolidated (Wrap-Up) Insurance Program Endorsement, and Punitive Or Exemplary Damage Exclusion Endorsement also apply.

## FACTUAL BACKGROUND

**The Underlying Lawsuit**

13. Underlying Plaintiff filed the Underlying Lawsuit against Calita and others on October 6, 2025, seeking damages arising from a construction site accident ("Accident") that occurred on September 23, 2025, in McAllen, Texas.[3]

---

[1] *See* 28 U.S.C. § 1391(b).
[2] A copy of the Scottsdale Policy is attached hereto as Exhibit "A."
[3] Exhibit B, Underlying Lawsuit Petition.

14. According to the Underlying Plaintiff, the Accident occurred when the deceased, Edgar Orozco, fell approximately nine feet from an elevated position when a structural component failed.[4]

15. The Underlying Lawsuit alleges that Caltia was the general contractor responsible for the construction project, which was located at 6719 N. 50 Lane, in McAllen.[5]

16. Edgar Orozco was working as an employee of M and S Electric, and the construction site was alleged to be residential construction.[6]

17. Edgar Orozco died on October 2, 2025 allegedly from the injuries suffered from the fall.[7]

18. Underlying Plaintiff is the surviving spouse of Edgar Orozco.[8]

19. The Underlying Lawsuit alleges negligence against all defendants for the following:

   a. Failing to provide a safe place to work;

   b. Failing to properly inspect and maintain the premises;

   c. Failing to ensure structural components were properly secured and capable of supporting workers;

   d. Failing to provide adequate fall protection;

   e. Failing to warn of dangerous conditions;

   f. Failing to provide adequate safety equipment and training;

   g. Creating a dangerous condition;

---

[4] Exhibit B, Para. 11.
[5] Exhibit B, Para. 8-9.
[6] Exhibit B, Para. 8.
[7] Exhibit B, Para. 12.
[8] Exhibit B, Para. 13.

       h.  Failing to comply with applicable safety regulations and industry standards;

       i.  Such other acts and/or omission as will be shown at the time of trial.[9]

20.    Underlying Plaintiff asserts claims of negligence and gross negligence, as well as premises liability and vicarious liability against Caltia.[10]

21.    Underlying Plaintiff seeks recovery of wrongful death and survival action damages, as well as exemplary damages, and court costs and pre-judgment and post-judgment interest.[11]

### The Policy

22.    The Scottsdale Policy affords coverage to Named Insureds thereunder, subject to certain terms, conditions, limitations, and exclusions.[12]

23.    The Policy's Commercial Excess Liability Coverage Form states that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured [Caltia] shown in the Declarations..."[13]

24.    A commercial general liability policy, number BIC5028640, was issued by Benchmark Insurance Company ("Benchmark") to Caltia, for the period of January 1, 2025 to January 1 2026 ("Benchmark Policy").[14]

25.    The Insuring Agreement of the Benchmark Policy provides in pertinent part that: "**We** will pay those sums that the **insured** becomes legally obligated to pay as **tort** damages because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend an **insured** as defined in paragraphs (1) and (2) of Section II – Who

---

[9] Exhibit B, Para. 17.
[10] Exhibit B, Para. 18, 29-32, 33-35.
[11] Exhibit B, Para. 37-49, and prayer.
[12] *See generally* Exhibit A, the Policy.
[13] *See* Exhibit A at CGL Form 00 01 04 13, p. 1 of 16.
[14] See Exhibit C.

Is An **Insured**, against any **suit** seeking those damages. However, **we** will have no duty to defend any **insured** in any **suit** where another insurer is providing a defense to the **insured**, regardless of the number of claims or claimants joined in the **suit** and regardless of when the damage or injury occurred or is alleged to have occurred, and **we** will have no duty to contribute to or participate in the defense provided by any other such insurer, and **we** will also have no duty or obligation to defend any **insured** who qualifies as an additional insured by way of an endorsement to this policy under any circumstance."[15]

26.  Under Scottsdale's Policy, coverage will follow the form of the "controlling underlying insurance", which in this case is the Benchmark Policy:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".
>
> Other words and phrases that appear in quotation marks in this Coverage Part have special meaning. Refer to Section **IV** – Definitions. Other words and phrases that are not defined under this Coverage Part but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".
>
> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance".
>
> There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions

---

[15] Exhibit C at CGL Form OCC1-21, p. 1 of 21.

and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.[16]

27. The insuring agreement provides that Scottsdale will:

> …pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.
>
> We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance."[17]

28. The Benchmark Policy qualifies as the "controlling underlying insurance" applicable to this matter. Under the terms of the Excess Policy, the coverage potentially available for payment as the "ultimate net loss" is not triggered until payment of the Benchmark Policy's limits is made or otherwise tendered.

29. The provisions identified in the Benchmark Policy are thereby adopted by reference to the Excess Policy and are not repeated here.

30. The Scottsdale Policy's Injury To Worker Exclusion[18] states:

**INJURY TO EMPLOYEE AND WORKER EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS LIABILITY COVERAGE PART**
**COMMERCIAL LIABILITY UMBRELLA COVERAGE PART**

**A.** The following exclusion is added:

**Injury to Employee or Worker**

This insurance does not apply to bodily injury, property damage, personal and advertising injury or injury or damage to:

---

[16] Exhibit A at CGL Form CX 00 01 04 13, p. 1 of 5.
[17] Exhibit A at CGL Form XLS-2322, p. 1 of 1.
[18] *See* Exhibit A at CGL Form UTS-576, p. 1 of 1.

1. An employee, leased worker, temporary worker, or volunteer worker of any insured;
2. Any "worker";
3. Any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured;
4. Any employee or anyone directly or indirectly employed by such contractor, subcontractor or sub-subcontractor or anyone for whose acts such contractor, subcontractor or sub-subcontractor may be liable; or
5. The spouse, child, parent, brother or sister of anyone

    in **1.** through **4.** above. This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and
2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** With respect to this endorsement, words and phrases that appear in quotation marks within this endorsement have special meaning. Other words and phrases that are not specifically defined within this

endorsement will have the meaning described in the policy to which this endorsement is attached.

The following definition is added:

"Worker" means any person performing duties directly or indirectly related to the conduct of any business, regardless of the person or organization responsible for hiring, retaining, employing, furnishing or directing the worker.

25. Scottsdale submits that the deceased's status as a worker on the construction site as alleged in the Underlying Lawsuit fall within the scope of the Injury To Worker Exclusion, barring coverage for the Underlying Plaintiff's claims against Caltia.

26. The Policy contains the Limited Residential Construction Operations Exclusion Endorsement, which states:

**LIMITED RESIDENTIAL CONSTRUCTION OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE PART**
**COMMERCIAL EXCESS LIABILITY COVERAGE PART**

**A.** The following exclusion is added to **SECTION I—COVERAGES, COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions, SECTION I—COVERAGES, COVERAGE B—PERSONAL AND ADVERTISING INJURY,** paragraph **2. Exclusions** and **SECTION I— COVERAGES,** paragraph **2. Exclusions:**

This insurance does not apply to bodily injury, property damage, personal and advertising injury or injury or damage arising out of, caused by, or in any way related to the insured's ownership, the insured's financial interest, your work or your product on or in connection with any residential development, including construction operations performed on or in connection with the following:

1. Detached or attached single family houses;
2. Multiple unit residential structures in which each unit is separately titled, such as a condominium, townhouse, duplex, triplex or fourplex;
3. "Tract homes";
4. Housing cooperative;
5. Planned unit development; or
6. Timeshare.

However, this exclusion does not apply to:

   a. The insured's ownership, the insured's financial interest, your work or your product related to an "apartment";

   b. Your work or your product related to the construction of a residential development involving one-family, two-family, three-family, four-family or multiple unit residential structures, including any combination thereof, not exceeding twenty-five (25) total "housing units" per residential development; or

   c. Your work or your product related to the remodeling or repair of any existing structure.

**B.** For purposes of this endorsement, a duplex is equivalent to two (2) "housing units," a triplex is equivalent to three (3) "housing units" and a fourplex is equivalent to four (4) "housing units."

We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or "suit" excluded by this endorsement.

For the purposes of this endorsement the following is added to **SECTION I—COVERAGES, COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **1. Insuring Agreement,** subparagraph **a., SECTION I—COVERAGES, COVERAGE B—PERSONAL AND ADVERTISING INJURY** paragraph **1. Insuring Agreement,** subparagraph

    **a.,** and **SECTION I—COV-ERAGES** paragraph **1. Insuring Agreement,** subparagraph **a.:**

    We may look to extrinsic evidence outside the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnity against a suit seeking damages for bodily injury, property damage, personal and advertising injury or injury or damage. We may rely on extrinsic evidence to deny the duty to defend or duty to indemnify for a suit.

C. With respect to this endorsement, words and phrases that appear in quotation within this endorsement have special meaning. Other words and phrases that are not specifically defined within this endorsement will have the meaning described in the policy to which this endorsement is attached.

    For purposes of this endorsement, the following definitions apply:

1. "Apartment" means a multi-family residence where there is common ownership of individual units and common areas, but where all individual units are held for lease or rent by tenants who have no ownership interest in the units they lease or rent.

2. "Housing units" means separate and independent places of abode intended for occupancy by a single household.

3. "Tract homes" means a grouping of single-family dwellings which:

    a. Are constructed in the same parcel, adjacent parcels or other parcels located within one geographic area and which are a single project; and

    b. Share common or similar design elements, floor plans, blueprints or architectural details.[19]

31. The Underlying Lawsuit alleges that the construction site was for residential construction; therefore, this endorsement applies to bar coverage.

32. The Scottsdale Policy also includes the Punitive or Exemplary Damage Exclusion Endorsement, which bars coverage as follows:

> In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

---

[19] Exhibit A at CGL Form UTS-593, p. 2 of 2.

> Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.
>
> If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.[20]

33.     The Underlying Lawsuit alleges a claim of gross negligence which is barred from coverage. Scottsdale further notes that the Benchmark Policy has a punitive damages exclusion as well, Exclusion P. Punitive Damages, Exemplary Damages, Multiplication Of Damages, Fines Or Penalties which applies to the Underlying Plaintiff's claim for gross negligence.

34.     In the unlikely event that coverage is owed, Scottsdale pleads that the Punitive or Exemplary Damage Exclusion Endorsement and Benchmark's punitive damages exclusion bar any recovery of exemplary damages.

## COUNT I – DECLARATORY RELIEF

35.     Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs above as though completely and fully set forth herein.

36.     An actual, present, and existing controversy exists among the parties to this lawsuit regarding the coverage afforded under the Policy for the claims asserted in the Underlying Lawsuit. The Court's making a declaration regarding these issues will confer certainty on the parties with respect to their rights and obligations under the Policy.

---

[20] See Exhibit A at CGL Form UTS-74g, p. 1 of 1.

37. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Scottsdale seeks a judicial declaration of its rights and duties under the Policy. The Court's declaration will confer certainty on the parties and serve the interests of justice.

38. The liability alleged against Calita and the damages sought in the Underlying Lawsuit exclusively arise out of actions falling with the scope of the Injury To Worker Exclusion Endorsement; therefore, its unambiguous terms apply to preclude coverage for the Underlying Plaintiff's claims against Caltia in the Underlying Lawsuit.

39. Scottsdale seeks a declaration that the Policy does not provide coverage, including defense and indemnity, for the Underlying Lawsuit due to the application of the Injury To Worker Exclusion Endorsement.

40. The liability alleged against Calita and the damages sought in the Underlying Lawsuit exclusively arise out of actions falling with the scope of the Limited Residential Construction Operations Exclusion Endorsement; therefore, its unambiguous terms apply to preclude coverage for the Underlying Plaintiff's claims against Caltia in the Underlying Lawsuit.

41. Scottsdale seeks a declaration that the Policy does not provide coverage, including defense and indemnity, for the Underlying Lawsuit due to the application of the Limited Residential Construction Operations Exclusion Endorsement.

42. In the unlikely event that coverage is owed, Scottsdale further pleads that the Punitive or Exemplary Damage Exclusion Endorsement applies to bar any coverage for an award of exemplary damages.

43. In addition to the foregoing, Scottsdale pleads all other conditions, terms, warranties, limitations, definitions, and exclusions of the Policy, which also may be found to be

applicable as Scottsdale's investigation of this matter continues, and reserves the right to amend its Complaint as additional and/or more specific information becomes available.

WHEREFORE, Scottsdale Insurance Company respectfully prays that this Honorable Court:

A. That process be issued as required by law and the Defendants be served with copies of the Summons and Complaint for Declaratory Judgment;

B. For a declaration by the Court declaring the rights and obligations of the parties under the Policy, including a judgment that the Policy's Injury To Worker Exclusion Endorsement precludes coverage for the Underlying Lawsuit and, therefore, Scottsdale owes no defense and/or indemnity in the Underlying Lawsuit.

C. For a declaration by the Court declaring the rights and obligations of the parties under the Policy, including a judgment that the Policy's Limited Residential Construction Operations Exclusion Endorsement precludes coverage for the Underlying Lawsuit and, therefore, Scottsdale owes no defense and/or indemnity in the Underlying Lawsuit

D. For a declaration by the Court declaring the rights and obligations of the parties under the Policy, including a judgment that the Policy's Punitive or Exemplary Damage Exclusion Endorsement precludes coverage for the Underlying Lawsuit as to any award of exemplary damages; and

E. For all such other and further relief as this Court deems just and proper.

Respectfully submitted,

PHELPS DUNBAR LLP

*/s/Mary "Amy" Cazes Greene*
Mary "Amy" Cazes Greene
TBN 24005647, Fed. Bar 22671
1001 Fannin., Ste. 2200
Houston, Texas 77002
Phone: (713) 626-1386
Fax: (713) 626-1388
Email: amy.greene@phelps.com

**ATTORNEY FOR PLAINTIFF SCOTTSDALE INSURANCE COMPANY**